**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

**FILED**

June 21, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ NM _____

DEPUTY

**UNITED STATES OF AMERICA,**

v.

**ELTON VALLARE,**

*Defendant.*

**Criminal No. 5:17-CR-547 (RCL)**

## MEMORANDUM OPINION

In 2017, defendant Elton Vallare was charged with five federal crimes related to his receipt, possession, and distribution of child pornography. Indictment, ECF No. 13. After ending relationships with four court-appointed attorneys, Mr. Vallare represented himself at trial, supported by standby counsel from the Office of the Federal Public Defender ("FPD"). In 2020, a jury convicted Mr. Vallare of all five charges. Jury Verdict, ECF No. 161. This Court sentenced Mr. Vallare to a total of 240 months of imprisonment, followed by ten years of supervised release. J., ECF No. 191. Mr. Vallare appealed his conviction and the U.S. Court of Appeals for the Fifth Circuit affirmed. *United States v. Vallare*, 842 Fed. App'x 953 (5th Cir. Apr. 8, 2021). Mr. Vallare further appealed to the Supreme Court, though he later voluntarily dismissed his petition for certiorari. *See Vallare v. United States*, 142 S. Ct. 577 (Dec. 3, 2021).

Mr. Vallare now moves *pro se* in this Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Def.'s Mot., ECF No. 246. The government opposes Mr. Vallare's motion and urges the Court to summarily deny his claims as without merit. Gov't Opp'n, ECF No. 250.

Upon consideration of the parties' filings, the applicable law, and the record, the Court will **DENY** Mr. Vallare's § 2255 motion.

1

## I.   BACKGROUND

### A. Factual and Procedural History

On June 14, 2017, agents from the Federal Bureau of Investigation ("FBI") executed a search warrant on Mr. Vallare's residence. Rev. Presentence Investigation Rep. ("PSR") ¶ 6, ECF No. 172. During the search, investigators recovered two laptop computers and an external hard drive. *Id.* ¶ 9, 11. A forensic review of the seized items revealed the presence of numerous video and image files depicting child pornography that were downloaded via a file sharing network, BitTorrent, between September 2014 and mid-March 2017. *Id.* ¶¶ 1, 11. The review also determined that various files containing child pornography were distributed through the BitTorrent network between mid-February 2015 and mid-March 2017. *Id.* ¶¶ 1, 11. In total, the computers and hard drive contained approximately 4,700 images and 52 videos of child pornography. *Id.* ¶ 11. The files were downloaded from an IP address associated with Mr. Vallare's address and the BitTorrent account that downloaded and distributed the files was registered to Mr. Vallare. *Id.* ¶¶ 5, 10. Mr. Vallare's mother, stepfather, and uncle lived at the same address as Mr. Vallare. *Id.* ¶ 6.

When FBI agents arrived at Mr. Vallare's residence, his mother and stepfather informed the agents that Mr. Vallare was not present in the home. *Id.* However, agents discovered Mr. Vallare hiding in the closet of the home's master bedroom. *Id.* At that point, Mr. Vallare exited the closet, identified himself, and announced, "I think I know why you are here." *Id.* At the time of the search, Mr. Vallare voluntarily told the FBI that he had not been employed for several years but that he previously worked for approximately twenty years as a contractor at U.S. military bases in Qatar and Kuwait. *Id.* ¶ 46. During the search, Mr. Vallare made movements

toward two loaded firearms and two large dogs. *Id.* ¶¶ 6, 8. He appeared agitated, belligerent, and unstable. *Id.* ¶¶ 8, 10. Mr. Vallare was arrested the same day of the search. *Id.* ¶ 10.

On July 10, 2017, Mr. Vallare was charged with two counts of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2) (Counts I and II); one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2) (Count III); and two counts of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Counts IV and V). *See* Indictment.

Mr. Vallare, who was financially unable to obtain his own counsel, was represented by four court-appointed attorneys prior to trial. First, on the day of Mr. Vallare's arrest, the Honorable John W. Primomo appointed the FPD to represent Mr. Vallare. Order, ECF No. 5. John R. "Jack" Carter appeared to represent Mr. Vallare. Carter Not. of Appearance, ECF No. 7. In late October 2017, Mr. Carter moved to withdraw as counsel following Mr. Vallare's communicated intent to file a disciplinary grievance against him, which created a conflict of interest. Carter Mot. to Withdraw, ECF No. 26. The Honorable Elizabeth S. Chestney granted Mr. Carter's motion on October 31, 2017. Order, ECF No. 29. That same day, Judge Chestney appointed Robert F. Gebbia to represent Mr. Vallare. Order, ECF No. 30. In early August 2018, Mr. Vallare filed a *pro se* motion to remove Mr. Gebbia as counsel for Mr. Gebbia's alleged failure to communicate with Mr. Vallare and alleged lack of preparation. Mot., ECF No. 46. The Honorable Henry J. Bemporad held a hearing on the motion on August 14, 2018. ECF No. 49; Minute Entry (08/14/2018). That same day, Judge Bemporad granted Mr. Vallare's motion, Order, ECF No. 50, and appointed Kristen L. Mulliner as new counsel, Order, ECF No. 51. On December 26, 2018, Ms. Mulliner moved to withdraw after she accepted a new position that created a conflict of interest in her continued representation of Mr. Vallare. Mot., ECF No. 65.

3

The next day, Judge Bemporad granted the motion, Text Order (12/27/2018), and appointed Albert D. Pattillo, III of the FPD as counsel. Order, ECF No. 66.

In May 2019, Mr. Pattillo moved to withdraw following Mr. Vallare's communicated intent to file a disciplinary grievance against him. Pattillo Mot. to Withdraw, ECF No. 76. Following a hearing, Judge Bemporad issued an order denying the motion without prejudice. Order, ECF No. 79. In that order, Judge Bemporad advised Mr. Vallare that "[c]onsidering documents Defendant has submitted and the history of this case, it does not appear that Defendant will be satisfied with the representation of any appointed attorney[,]" that "if he wishes his current attorney to withdraw, he will have to represent himself," and that "if Defendant wishes to represent himself, he must file a specific motion to that effect." *Id.* at 1–2. In September 2019, Mr. Vallare moved to proceed *pro se*. Mot., ECF No. 88. Judge Bemporad held two hearings on the motion, ECF Nos. 90 & 98, before granting the motion in November 2019, Text Order (11/08/2019). Alfredo R. Villarreal of the FPD was appointed to serve as standby counsel. Villarreal Not. of Appearance, ECF No. 92. The case was transferred to the undersigned prior to trial. Order of Transfer, ECF No. 107.

In January 2020, following a four-day trial, a jury found Mr. Vallare guilty of all five counts in the indictment. *See* Verdict Form. The Court imposed a total of 240 months' imprisonment, a ten-year term of supervised release, a special assessment of $500, and restitution in the amount of $29,000. J. at 2–3, 6. The 240-month sentence represented the statutory maximum, though Mr. Vallare's guideline imprisonment range under the U.S. Sentencing Guidelines was up to 262 months. Sent'g Tr. 14:6–7, ECF No. 207.

Mr. Vallare appealed the Court's judgment. Not. of Appeal, ECF No. 178. This Court granted Mr. Vallare's request for representation on appeal. Order, ECF No. 190. Bradford W.

Bogan of the FPD represented Mr. Vallare on appeal. *See generally* Def.'s Mot. On direct

appeal, Mr. Vallare raised one issue: "that his two sentences for possession of child pornography

on different devices—a laptop computer and an external hard drive—are multiplicitous."

*Vallare*, 842 Fed. App'x 953. The Fifth Circuit affirmed this Court's judgment, acknowledging,

as Mr. Vallare conceded, that his argument was foreclosed by Fifth Circuit precedent. *Id.* (citing

*United States v. Planck*, 493 F.3d 501, 503–05 (5th Cir. 2007)). Mr. Vallare filed a petition for

writ of certiorari with the Supreme Court, *Vallare*, 142 S. Ct. 577, which was dismissed on

December 3, 2021 pursuant to Mr. Vallare's motion. *Id.*

### B. The Present Motion

Mr. Vallare now moves *pro se* to vacate, set aside, or correct his sentence under 28

U.S.C. § 2255. He argues, broadly, that his sentence must be vacated because he was denied

effective assistance of counsel and because the Court both made erroneous rulings at trial and

engaged in judicial misconduct. *See generally* Def.'s Mot. The government opposed and Mr.

Vallare replied. *See generally* Gov't Opp'n; Def.'s Reply. His motion is now ripe for review.

As a threshold matter, Mr. Vallare's reply brief raises several new claims. Generally,

"[a]rguments raised for the first time in a reply brief, even by pro se litigants . . . are waived."

*Eakin v. U.S. Dep't of Def.*, No. 5:16-cv-972 (RCL), 2019 WL 2368683, at *1 n.1 (W.D. Tex.

June 5, 2019) (quoting *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005)).

Nevertheless, the court may consider an issue raised for the first time in a reply brief if it is in

responding to an issue raised in the non-movant's brief. *United States v. Ramirez*, 557 F.3d 200,

203 (5th Cir. 2009). Construing Mr. Vallare's reply liberally, as this Court must, *see Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007), the Court finds that most of the issues raised in Mr. Vallare's

reply brief either reiterate arguments raised in his initial motion or respond to claims made by the

government. Therefore, the Court will consider most of the claims raised in both his motion and

reply. However, the Court will not consider the following claims raised for the first time in reply,

as those claims do not relate back to either his motion or the government's opposition: (1) that

the government did not prove ownership of the computers containing the child pornography

material, Def.'s Reply at 7; (2) the United States did not demonstrate injury or identify a victim,

*id.* at 8–10; or (3) or that he was unlawfully tried by an all-white jury, *id.* at 11.

With that in mind, the Court summarizes the properly raised claims in Mr. Vallare's

motion as the following:

### 1. *Ineffective Assistance of Counsel Claims Against Jack Carter*

Claim 1: failing to advise Mr. Vallare during an "interrogation" with the FBI, Def.'s Mot. at 18–19;[1]

Claim 2: failing to intervene and prevent the government from "inflat[ing] the count[s] in the indictment from 5 counts to 7 counts," *id.* at 29; and

Claim 3: failing to challenge various defects in the indictment, Def.'s Reply at 8–9.

### 2. *Ineffective Assistance of Counsel Claims Against Robert F. Gebbia, Kristen L. Mulliner, and Albert D. Pattillo, III*[2]

Claim 4: failing to investigate a fourth occupant of the residence, *id.* at 20;

Claim 5: failing to contact the embassies of Qatar and Kuwait to discover information regarding his limited internet access in those countries, *id.* at 21;

Claim 6: failing to contact Mr. Vallare's prior employer to establish that he did not have internet access while employed in Qatar and Kuwait, *id.* at 21–22;

Claim 7: failing to contact Mr. Vallare's ex-wife to establish she could not have accessed his BitTorrent program as Mr. Vallare had told the FBI, *id.* at 22–23;

Claim 8: failing to obtain records from the Department of Homeland Security which show the dates Mr. Vallare worked overseas and when he returned to the United States, *id.* at 24;

---

[1] Given inconsistencies in the pagination supplied by Mr. Vallare, the Court uses the electronic numbering.
[2] The Court construes Mr. Vallare's motion as advancing Claims 4 through 13 against all three attorneys unless otherwise noted.

Claim 9: failing to challenge the admissibility of his statements made to the FBI at the time of the search, Def.'s Reply at 6–7;

Claim 10: failing to challenge the FBI's authority for Mr. Vallare's arrest, *id.* at 24–25; Def.'s Reply at 2–5;

Claim 11: failing to investigate the different descriptions given by FBI agents as to how and when Mr. Vallare exited the closet during the search-warrant execution, *id.* at 26;

Claim 12: failing to investigate the discrepancies between time stamps on Mr. Vallare's home surveillance video as compared to the FBI arrest log, *id.* at 26–28; and

Claim 13: failing to challenge the FBI's identification of Mr. Vallare based on records provided by his cable and Internet provider and visual surveillance, *id.* at 28.

### 3.  *Ineffective Assistance of Counsel Claims Against Alfredo Villarreal*

Claim 14: failing to inform Mr. Vallare of the unavailability of subpoenaed witnesses until the day of trial, *id.* at 38; and

Claim 15: failing to attentively follow trial proceedings, *id.*

### 4.  *Ineffective Assistance of Counsel Claim Against Bradford W. Bogan*

Claim 16: failing to consult with Mr. Vallare about what issues his appeal would cover or allow him to "participate in his appeal." *Id.* at 4–8.

### 5.  *Judicial Rulings and Conduct*

Claim 17: not allowing Mr. Vallare to conduct his own voir dire, *id.* at 33;

Claim 18: not admitting certain FBI case reports into evidence, *id.* at 33–34;

Claim 19: engaging with a juror in a "joking manner," *id.* at 35;

Claim 20: assigning to the government the responsibility to ensure that witnesses listed on the defense witness list appeared for trial, *id.* at 35–36;

Claim 21: exercising bias against him because the undersigned is an employee of the United States, Def.'s Reply at 9.

## II.    LEGAL STANDARDS

### A. 28 U.S.C. § 2255

A prisoner may move to vacate, set aside, or correct his sentence if (1) the sentence was

imposed "in violation of the Constitution or laws of the United States"; (2) the court lacked

jurisdiction to impose the sentence; (3) the sentence "was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden to prove his right to relief by a preponderance of the evidence. *Williams v. Smith*, 434 F.2d 592, 595 (5th Cir. 1970).

While a district court must construe *pro se* filings liberally, *see Erickson*, 551 U.S. at 94, the court need not hold an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. 2255(b).

### B. Cause and Prejudice

"[O]nce a claim is raised and adjudicated on direct appeal, the prisoner cannot re-raise the claim under § 2255 absent a change in law." *United States v. Davis*, 971 F.3d 524, 531 (5th Cir. 2020). Furthermore, a defendant "may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)) (internal comma removed). Cause may be shown where a claim is "so novel that its legal basis was not reasonably available to counsel," but "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley v. United States*, 523 U.S. 614, 622–23 (1998) (internal quotations and citations omitted). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphases in original).

### C. Ineffective Assistance of Counsel

A defendant who claims ineffective assistance of counsel must show: (1) "that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). An ineffective assistance of counsel claim fails if the defendant fails to demonstrate either prong. *Id.* at 700.

Regarding the performance prong, counsel is not held to "an errorless standard." *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. 1981). Nor is counsel "necessarily ineffective for failing to investigate every conceivable matter inquiry into which could be classified as nonfrivolous." *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992). Instead, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional competence, or that, under the circumstances, the challenged action might be considered sound trial strategy." *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988) (internal quotation marks and citation omitted). In this way, counsel's "conscious strategic or tactical trial decisions" "do not constitute unreasonable actions" even when "20/20 hindsight and knowledge of the intervening conviction might lead another attorney to opt otherwise." *United States v. Lauga*, 762 F.2d 1288, 1291 (5th Cir. 1985). Overall, judicial scrutiny of a counsel's performance "must be highly deferential." *Strickland*, 466 U.S. at 689.

To show prejudice, a defendant must demonstrate that his counsel's errors were so serious as to "render[] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 364 (1993) (citing *Strickland*, 466 U.S. at 687). In other words, a defendant must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *United States v. Anderson,* 987 F.2d 251, 261 (5th Cir. 1993) (quoting *Strickland*, 466 U.S. at 694). In this way, the petitioner must show there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotations and modifications omitted).

### D. Judicial Rulings and Conduct

"A trial court is ordinarily accorded wide latitude and discretion in making evidentiary rulings." *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1075 (5th Cir. 1986). Similarly, "[t]he district judge has a wide discretion in regulating trial procedure." *Walker v. Loop Fish & Oyster Co.*, 211 F.2d 777, 781 (5th Cir. 1954). A trial judge's rulings on evidentiary and trial-management matters are "reviewable only for abuse of discretion." *United States v. Masat*, 896 F.2d 88, 94 (5th Cir. 1990).

For a claim of judicial misconduct "[t]o rise to the level of constitutional error, the district judge's actions, viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." *United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994). In other words, the judge's intervention in the trial must be "quantitatively and qualitatively substantial." *United States v. Davis,* 752 F.2d 963, 974 (5th Cir. 1985). A judge's intervention is "quantitatively and qualitatively substantial" when "the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial." *United States v. Williams*, 809 F.2d 1072, 1086 (5th Cir. 1987) (internal citation omitted).

### III.    DISCUSSION

Mr. Vallare's motion raises two categories of claims: (1) that his various attorneys failed in adequately representing him in numerous ways, *see* Def.'s Mot. at 4–8, 18–28, 38; Def.'s Reply at 6–9, and (2) that this Court made evidentiary and trial-management errors and engaged in some form of misconduct, *see* Def.'s Mot. at 33–35; Def.'s Reply at 9. The government argues that all of Mr. Vallare's claims are meritless. *See generally* Gov't Opp'n. This Court agrees.

### A. Mr. Vallare's Motion Is Timely and Not Procedurally Barred

As a threshold matter, Mr. Vallare's claims are not time-barred. A defendant must bring any § 2255 claims within one year of when the "judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). When a defendant appeals his conviction in federal court and an appellate court later dismisses his appeal on his own motion, he is "placed in the same position as if [he] had never filed a notice of appeal in the first place." *Williams v. United States*, 553 F.2d 420, 422 (5th Cir. 1977). And "[w]hen a defendant does not file a direct appeal, his conviction becomes final on the day when the time for filing a direct appeal expires." *United States v. Scruggs*, 691 F.3d 660, 669 (5th Cir. 2012). "The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate." Sup. Ct. R. 13.

The Fifth Circuit affirmed Mr. Vallare's conviction and entered judgment on June 8, 2021. J., *United States v. Vallare*, 20-50433, ECF No. 75 (5th Cir.). Mr. Vallare filed his petition for writ of certiorari with the Supreme Court on September 7, 2021. Sup. Ct. Not., *Vallare*, 20-50433, ECF No. 78. His petition was timely. *See* Miscellaneous Sup. Ct. Order (07/19/2021) (extending deadline to file timely petition for writ of certiorari from 90 days to 150 days from the date of the judgment). Mr. Vallare later moved to voluntarily dismiss his petition, which the

Supreme Court granted. *See Vallare*, 142 S. Ct. 577. Thus, Mr. Vallare's conviction became final on November 5, 2021, when the deadline for filing his certiorari petition had expired. *See Vallare*, 142 S. Ct. 577. Motions by *pro se* prisoners are considered filed when placed in the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 276 (1988). Mr. Vallare mailed his motion on August 6, 2022. Def.'s Mot. at 12. As Mr. Vallare filed his motion less than one year after his conviction became final, his motion is timely.

Additionally, the Court notes that all of Mr. Vallare's claims could be construed as procedurally barred because he did not raise these issues on direct appeal, nor does he rely on a new legal theory that was previously unavailable. *See Frady*, 456 U.S. at 168. However, his motion alleges ineffective assistance of his appellate counsel. That claim, if true, would have prevented Mr. Vallare from exercising the opportunity to challenge his conviction on direct appeal. Thus, out of fairness to Mr. Vallare, and particularly because of his *pro se* status, the Court will not construe any of his claims as procedurally barred and instead will evaluate his claims on the merits.

### B. Mr. Vallare's Ineffective Assistance of Counsel Claims Are Without Merit

The Court will next individually address Mr. Vallare's ineffective assistance claims. Mr. Vallare has failed to demonstrate that his attorneys performed deficiently or that he suffered prejudice, and therefore, his claims must be denied.

While framed as ineffective assistance of counsel claims, many of Mr. Vallare's arguments relate to perceived misrepresentations and investigative improprieties by the FBI during the course of their conduct with him. As dissatisfied as Mr. Vallare may be with the investigation, he cannot show that his attorneys deprived him of his right to a fair, constitutional

criminal proceeding when they did not pursue his allegations of FBI misconduct. Nor does he demonstrate that the FBI actually erred in its investigation.

### 1. Ineffective Assistance of Counsel Claims Against Jack Carter

Claim 1 of Mr. Vallare's motion alleges that his first attorney, Jack Carter, failed to advise him during an "interrogation" with the FBI at a detention facility run by the United States Marshals Service at a former federal courthouse. Def.'s Mot. at 18; Def.'s Reply at 3. According to Mr. Vallare, Mr. Carter failed to advise him of his right to have the "interrogation" recorded, Def.'s Mot. at 18–19; Def.'s Reply at 6, failed to advise him regarding what questions he did or did not have to answer, Def.'s Mot. at 18–19, and "quickly agreed to recuse himself from the case" when Mr. Vallare confronted Mr. Carter about the "interrogation," Def.'s Mot. at 19. But, as the government correctly notes, the record is devoid of any evidence indicating that the "interrogation" described by Mr. Vallare ever occurred. *See* Gov't Opp'n at 9. Moreover, contrary to Mr. Vallare's assertion, Mr. Carter moved to withdraw from the case after Mr. Vallare threatened to file a grievance against him, and neither the motion nor the draft grievance mention this "interrogation" or Mr. Carter's allegedly deficient performance during it. *See* Carter Mot. to Withdraw; Counsel Aff., ECF No. 26-1; Grievance Draft, ECF No. 26-2. And neither Mr. Vallare nor Mr. Carter raised this issue at the preliminary hearing and detention hearing on Mr. Carter's motion. *See* Prelim. Hr'g & Detention Hr'g Tr, ECF. No. 25. Although the absence of a prior mention of this "interrogation" is not affirmative evidence that it did not occur, such information would be expected if the "interrogation" was the actual basis for Mr. Carter's motion to withdraw. This dearth of evidence points toward the lack of veracity of Mr. Vallare's claim.

Mr. Vallare's second claim alleges that Mr. Carter failed to intervene and prevent the government from "inflat[ing] the count[s] in the indictment from 5 counts to 7 counts." Def.'s

Mot. at 29. This claim is quickly rebutted by the factual record: Mr. Vallare was only charged with five counts. *See* Indictment.

Mr. Vallare's third claim accuses Mr. Carter of ineffective assistance of counsel by failing to challenge various perceived defects in the indictment. Def.'s Reply at 8–9. Specifically, Mr. Vallare claims that the indictment fails because it: (1) "was absent of any mention of a violation of the supreme law of the land"; (2) "the plaintiff, known as the United States of America[,] is just that, a corporation" that only has "equal protection and due process" rights, and Mr. Vallare "was not accused of violations any of" those rights; and (3) his convictions were for "non-common law offenses that don't even have anything to do with the sentencing guidelines for sexual exploitation of a minor or sexual abuse of a minor." *Id.*

The Court will address Mr. Vallare's first and third arguments, and then address his second. As for the first argument, it is well-settled that an indictment does not need to contain the specific language Mr. Vallare proffers; it must only charge a violation of federal law. *See Stassi v. United States*, 152 F.2d 581, 582 (5th Cir. 1945) ("[I]f the indictment charges a crime under any law of the United States, it is sufficient to support the verdict."). Regarding his third argument, Mr. Vallare is correct that he was convicted for non-common law offenses. *See United States v. Harrelson*, 766 F.2d 186, 189 (5th Cir. 1985) ("There are no federal common-law crimes, only statutory ones.") (internal citation omitted). However, he is incorrect that the applicable Sentencing Guidelines were unrelated to the sexual exploitation of a minor. The statute under which he was convicted, 18 U.S.C. § 2252A, was specifically entitled by Congress as "Certain activities relating to material involving the sexual exploitation of minors." Because Mr. Vallare's convictions related to the sexual exploitation of a minor and because "[t]he guidelines operate post-conviction in directing the sentencing authority to the appropriate

14

sentence within the statutory range applicable to the offense of conviction," *United States v. Langley*, 919 F.2d 926, 930 (5th Cir. 1990) (citing 18 U.S.C. § 3551), the Guidelines applied to his sentence, as this Court properly acknowledged. Sent'g Tr. 5:23–14:14. Thus, the first and third parts of Claim 3 are without merit.

Regarding his second argument with respect to Claim 3, Mr. Vallare misunderstands the nature of a criminal proceeding. The United States is a sovereign entity, not a corporation. *See United States v. Shaw*, 309 U.S. 495, 500 (1940). The executive branch, through the Attorney General and nationwide United States Attorneys, enforces the federal criminal statutes. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). Those statutes are designed to, among other things, "protect society by punishing and deterring wrongdoing." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1333 (5th Cir. 1995). And as the Supreme Court has plainly stated, "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 758 (1982). Thus, statutes criminalizing the sexual exploitation of minors are a product of public policy, not any property interest by the United States. So, as previously discussed, because Mr. Vallare was properly charged with—and convicted of—a valid federal statute, he cannot challenge his indictment on this basis.

Mr. Vallare has failed to demonstrate that his first counsel, Mr. Carter, performed deficiently. Thus, the Court need not address the prejudice prong and must conclude that Claims 1, 2, and 3 are without merit.

>    2. *Ineffective Assistance of Counsel Claims Against Robert F. Gebbia, Kristen L. Mulliner, and Albert D. Pattillo, III*

Mr. Vallare's fourth through thirteenth claims assert that prior counsels Robert F. Gebbia, Kristen L. Mulliner, and Albert D. Pattillo, III provided ineffective assistance by failing to

investigate numerous points that purportedly could have demonstrated his innocence, or at least generated reasonable doubt of his guilt. *See* Def.'s Mot. at 20–28. Where an ineffective assistance claim relates to an allegation of inadequate investigation, a petitioner must "allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989). "The fact that an investigation would have turned up admissible evidence is in itself insufficient to show prejudice." *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982). Courts must be especially cautious around "argument[s] [that] essentially come[ ] down to a matter of degrees" of whether counsel investigated enough because those inquiries are "less susceptible to judicial second-guessing." *Kitchens v. Johnson,* 190 F.3d 698, 703 (5th Cir. 1999). With these principles in mind, the Court will explain why Mr. Vallare's claims against Mr. Gebbia, Ms. Mulliner, and Mr. Pattillo are without merit.

Claim 4 of Mr. Vallare's motion alleges that his counsels failed to investigate his uncle and roommate, Elton Ruego, as a potential suspect.[3] Def.'s Mot. at 20; *see* Trial Tr. (Day 2) 112:7, ECF No. 210. According to Mr. Vallare, the FBI erroneously ruled Mr. Ruego out as a suspect because of his "lack of ability to use computers" due to his "advanced age" of 70 years old. Def.'s Mot. at 20. However, Mr. Vallare's motion does not explain how or what his counsels should have investigated further. More importantly, Mr. Vallare does not state what impact such an investigation would have had at trial. At trial, the government elicited testimony about Mr. Ruego from one of the FBI agents who executed the search warrant at Mr. Vallare's residence. *See* Trial Tr. (Day 2) 192:5–13. Mr. Vallare had the ability to, and did, cross-examine the agent about the steps that the FBI did or did not take to investigate Mr. Ruego and why they chose not

---

[3] Mr. Vallare's motion uses the spelling "Reugo." However, the record confirms that the correct spelling is "Ruego." *See, e.g.*, Trial Tr. (Day 1) 22:13, ECF No. 209.

to interview him.[4] *Id.* 286:18–288:13; Gov't Opp'n at 11. The agent testified that the FBI did not

consider Mr. Ruego to be a suspect, that the FBI agent ran a criminal background check on Mr.

Ruego at Mr. Vallare's request.[5] *Id.* Therefore, Mr. Vallare cannot show that he was prejudiced

by any failure to investigate Mr. Ruego as a suspect, even if such a failure occurred.

Claims 5 and 6 of Mr. Vallare's motion center on what he perceives as his attorneys'

failure to follow up with his previous employer and the embassies of Kuwait and Qatar to gather

information about his Internet access, or lack thereof, while he was in those countries. Def.'s

Mot. at 21–22. As the government notes, this matter was already addressed prior to trial when

the Court quashed Mr. Vallare's subpoenas to these entities. Gov't Opp'n at 11. According to

investigative reports, during the FBI's search, Mr. Vallare told the FBI that he learned about the

BitTorrent network in Kuwait and Qater. *See* Pretrial Conf. Tr. 26:18–27:3, ECF No. 208. Mr.

Vallare attempted to subpoena his former employer as well as Kuwaiti and Qatari embassy

staffers in Washington, D.C. to cast doubt on the FBI's recital of his statement by showing that,

because he had limited Internet access while abroad, he would not have been able to learn about

the BitTorrent network while in Kuwait or Qatar. *See id.* 25:2–14. The Court quashed the

subpoenas because none of the subpoenas "would produce any evidence of what actual

knowledge [Mr. Vallare] had or access to systems [Mr. Vallare] had[.]" *Id.* 28:14–23. Mr.

Vallare's motion rehashes his argument that the subpoenas could have led to evidence to

contradict his statement during the search without showing that either his former employer or the

Kuwaiti and Qatari embassy staffers possessed specific and relevant knowledge of his Internet

access while in their countries. What is more, even if Mr. Vallare had been able to obtain such

---

[4] Mr. Ruego passed away prior to trial. *See id.* at 22:13.
[5] Mr. Vallare did not draw attention to Mr. Ruego in his closing argument, indicating that even Mr. Vallare did not believe that Mr. Ruego was a viable suspect. *See generally* Trial Tr. (Day 4), ECF No. 213.

evidence, he cannot show how such information "would have altered the outcome of the trial." *Green,* 882 F.2d at 1003. Where and when he learned about the BitTorrent network was irrelevant to the charges he faced. And the FBI determined that the images and videos of child pornography were downloaded or distributed well after the time period that Mr. Vallare was working in Kuwait and Qatar. Claims 5 and 6 therefore must be denied.

Claim 7 relates to Mr. Vallare's attorneys' alleged failure to investigate his ex-wife's access to his peer-to-peer exchange accounts. Def.'s Mot. at 22–23. He insists that his ex-wife lived at the same residence as his mother in 1990, when he was in Kuwait, and had access to his exchange accounts during that time. *Id.* at 22. Mr. Vallare faults the FBI for not pursuing his ex-wife as a suspect apparently "due to the primitive state of the U.S. internet" in 1990 "which could not accommodate the download of large amounts of data" when she lived at the residence. *Id.* at 23. But there is a much more benign explanation for ruling his ex-wife out as a suspect: the images and videos at issue in Mr. Vallare's case were downloaded and distributed between 2014 and 2017, and there is no indication or allegation that Mr. Vallare's ex-wife lived at his residence or had access to his accounts during that time period. For this reason, further investigation into his ex-wife would not have aided Mr. Vallare's defense, as his attorneys undoubtedly realized. Claim 7, as with the previous claims, is without merit.

Claim 8 concerns Mr. Vallare's allegation that his attorneys failed to subpoena and question the Department of Homeland Security about his travel records and the time he spent abroad. Def.'s Mot. at 23–24. Like his argument with respect to Claims 5 and 6, Mr. Vallare insists that this evidence would have contradicted his previous statement to the FBI during the search that he had been in the United States for ten years prior to the date of the search. *Id.* at 24. And like those previous claims, Claim 8 fails because the dates of his travel were irrelevant to

the case, as even Mr. Vallare does not allege that he was abroad during the time period of the relevant conduct.

Through Claim 9, Mr. Vallare asserts generally that his pretrial counsel was ineffective for failing to contest the admissibility of his statements made to the FBI at the time of the search. Def.'s Reply at 6–7. It is unclear which statements Mr. Vallare alleges were admitted in error. Regardless, his contention is without merit. To the extent that Mr. Vallare challenges statements made during the alleged interview at a detention facility, those claims are without merit, as discussed in Part III.B.1. To the extent that Mr. Vallare's motion relates to other statements he made on the day of the FBI's search of his residence not already discussed, the agents advised Mr. Vallare that he was not under arrest, that he was not obligated to make any statement to the FBI, and that any interview with the FBI was voluntary. Gov't Opp'n at 3. Nevertheless, Mr. Vallare agreed to a voluntary interview. *Id.* Any out-of-court statements made by Mr. Vallare and offered against him at trial by the government were properly admitted as non-hearsay statements by a party-opponent under Federal Rule of Evidence 801(d)(2). *See United States v. Sanjar*, 876 F.3d 725, 739 (5th Cir. 2017). For these reasons, Claim 9 does not establish that his counsels performed deficiently.

Mr. Vallare's tenth claim alleges that his arrest was illegal because the FBI lacked probable cause for the arrest and because the FBI required express authority from the assistant United States attorney on his case prior to arresting him. Def.'s Mot. at 24–25; Def.'s Reply at 5. As a threshold matter, "[t]he Fourth Amendment requires than an arrest be supported by a properly issued arrest warrant *or* probable cause." *Glenn v. City of Taylor*, 242 F.3d 307, 313 (5th Cir. 2001) (emphasis added). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a

reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). Mr. Vallare was arrested without a warrant but based on the existence of probable cause. PSR ¶ 10. Here, the evidence obtained by the FBI—images and videos depicting child pornography on computers and a hard drive that Mr. Vallare voluntarily admitted belonged him—as well as Mr. Vallare's behavior during the search—hiding from the FBI agents, attempts to obtain loaded firearms, refusal to obey commands from law enforcement—were clearly sufficient for a reasonable person to conclude that Mr. Vallare had committed a criminal offense. Moreover, Magistrate Judge Primomo, not the assistant United States attorney, was the party required to, and who did, authorize Mr. Vallare's detention based on the existence of probable cause. *See* Crim. Compl., ECF No. 1; Prelim. Hr'g & Detention Hr'g, ECF No. 11. Mr. Vallare's attorneys were not deficient for failing to challenge his arrest based on a theory of lack of probable cause or requisite authority, and therefore Claim 10 is without merit.

Claim 11 alleges that three FBI agents gave conflicting accounts at the preliminary hearing, before the grand jury, and at trial about his behavior and statements to agents when they discovered him in the master bedroom, and that Mr. Vallare's attorneys were ineffective by not conducting further investigation into these competing stories. Def.'s Mot. at 25–26; Def.'s Reply at 2–3. The government responds that the statements were not inconsistent. *See* Gov't Opp'n at 12. The Court's own review of the record comports with the government's view. The agents, who all testified at trial as well, confirmed that they encountered Mr. Vallare in the closet of the master bedroom, that he exited the closet, that the agents advised him to get on the ground, and that he complied with their request. *See* Prelim. Hr'g & Detention Hr'g Tr. 7:14–8:16; Trial Tr. (Day 2) 196:14–197:6, 319:5–22; Trial Tr. (Day 3) 537:19–23, ECF No. 206. Mr. Vallare had

the opportunity to cross-examine all three agents about potential inconsistencies in their statements. He elected to cross-examine two of them, but about other matters. *See* Trial Tr. (Day 2) 217:7–288:16; Trial Tr. (Day 3) 370:23–429:7. Mr. Vallare did not further explore this matter during trial, when he had the opportunity to do so, nor does he demonstrate on collateral review how the agents' accounts materially differ. But, regardless, details of how he was discovered in the master bedroom are irrelevant to proving whether he received, possessed, and distributed child pornography. Thus, Claim 11 must be denied.

Mr. Vallare's twelfth claim states that prior counsel failed to investigate apparent discrepancies between time stamps on the images of the FBI search recorded on Mr. Vallare's home surveillance system and the times that the FBI logged certain actions occurring. Def.'s Mot. at 26–29. According to the government, the home surveillance footage, the accuracy of which is unverified, was not part of the government's evidence against Mr. Vallare, and thus completely within Mr. Vallare's control to share, or not to share, with his counsels. Gov't Opp'n at 12. But more importantly, Mr. Vallare has not shown how the recordings materially dispute the government's narrative of events leading up to his arrest or how such discrepancies, if any, bear on whether Mr. Vallare's guilt with respect to his charges. Because Mr. Vallare does not adequately explain why his attorneys performed deficiently or why he suffered prejudice with respect to Claim 12, the Court denies this claim.

Claim 13 of Mr. Vallare's motion insists that his previous counsels failed to probe the FBI's specific identification of him because records obtained through his cable and Internet provider do not state his name and because the FBI never observed him on visual surveillance prior to the search. Def.'s Mot. at 28 (citing Def.'s Trial Ex., 223-2). At trial, an FBI agent testified about how the records provided by Mr. Vallare's service provider listed Mr. Vallare's

mother's name as the customer on the account, that the account was registered to a specific

address, and that the FBI identified Mr. Vallare as a resident of that address based on database

searches. *See* Trial Tr. (Day 2) 169:6–16; 179:10–16. Additional investigation by the FBI,

including an investigation into the BitTorrent network as well as Mr. Vallare's own statements to

agents at the time of the search-warrant execution, linked the files to Mr. Vallare. At trial, Mr.

Vallare conducted an extensive cross-examination of the agent about how the information

provided by his cable and Internet provider was part of the evidence used in identifying him and

about any visual surveillance. *See id.* 219:20–232:3; 234:17–240:14. Mr. Vallare's motion does

not indicate what additional points, if any, he expected his counsels to develop. Therefore, Mr.

Vallare cannot show that any failure on their part, if it occurred, caused him prejudice. For this

reason, Claim 13 fails.

*    *    *

Claims 4 through 13 do not "allege with specificity what the investigation would have

revealed and how it would have altered the outcome of the trial." *Green,* 882 F.2d at 1003.

Similarly, the claims do not demonstrate that Mr. Vallare's pretrial counsel's actions were

unreasonable. *Lauga*, 762 F.2d at 1291. Mr. Vallare has not met his burden to demonstrate

deficient performance or prejudice with respect to his claims against Mr. Gebbia, Ms. Mulliner,

and Mr. Pattillo. Therefore, the Court finds that Claims 4 through 13 are without merit.

*Strickland,* 466 U.S. at 694.

### 3.  *Ineffective Assistance of Counsel Claims Against Alfredo Villarreal*

Claims 14 and 15 of Mr. Vallare's motion allege that his standby counsel at trial, Alfredo

Villarreal, was ineffective by: (1) failing to inform Mr. Vallare of the unavailability of

subpoenaed witnesses until the day of trial when it was too late to secure their appearance and

22

(2) failing to attentively follow trial proceedings. Def.'s Mot. at 38. The Court finds these allegations to be without merit.

Regarding the first claim against Mr. Villarreal, Mr. Vallare does not state which unavailable witnesses he sought to call. Based on the record, Mr. Vallare appears to be referencing four witnesses that he attempted to subpoena prior to trial: two former FBI interns and two FBI agents. At the pretrial conference, Mr. Vallare unequivocally withdrew his request to call all four of these witnesses. Pretrial Conf. Tr. 34:2–35:16. Therefore, these witnesses' unavailability was a result of Mr. Vallare's voluntary withdrawal of their subpoenas to testify, not any inaction on the part of Mr. Villarreal.

Mr. Vallare's second claim against Mr. Villareal is equally unfounded. If a court elects to appoint standby counsel, counsel's role of is one of an "observer, an attorney who attends the proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense." *United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1990). In fact, "the key limitation on standby counsel is that such counsel *not be responsible*—and not be perceived to be responsible—for the accused's defense." *Id.* (emphasis in original). Thus, Mr. Villarreal could not have been actively involved in the case without violating Mr. Vallare's right, enshrined by *Faretta v. California*, 422 U.S. 806 (1975), "to preserve actual control over the case he cho[se] to present to the jury." *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984). Regardless, review of the trial record belies Mr. Vallare's claim. Nowhere does the record indicate that Mr. Villarreal was unfocused or unresponsive during trial. *See, e.g.*, Trial Tr. 6:15–7:13; 75:14–15; 80:21–81:4; 454:19–22; 458:2–13; 463:12–15; 550:18–20.

Mr. Vallare's motion fails to demonstrate that Mr. Villarreal performed deficiently. Therefore, Claims 14 and 15 are without merit.

#### 4. *Ineffective Assistance of Counsel Claim Against Bradford W. Bogan*

Mr. Vallare next alleges, in Claim 16, that his appellate counsel, Bradford Bogan of the FPD, failed to consult with him about what his appeal would cover or allow him to "participate in his appeal[.]" Def.'s Mot. at 4–8. The government argues that appellate counsel's conduct was not deficient. Gov't Opp'n at 13–14. "A criminal defendant has a Sixth Amendment right to the effective assistance of counsel on direct appeal." *Loden v. McCarty*, 778 F.3d 484, 501 (5th Cir. 2015) (citing *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)). "When reviewing appellate counsel's conduct in the context of *Strickland*, [the court must] first assess whether counsel failed to raise a nonfrivolous issue that was clearly stronger than the issues raised on appeal." *Moore v. Vannoy*, 968 F.3d 482, 489 (5th Cir. 2020) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). "Counsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531–32 (5th Cir. 2008) (internal citation omitted).

After twice moving for an extension of the deadline to file his appellant brief due to competing deadlines in other cases, counsel filed a brief arguing that Mr. Vallare's sentences for two convictions of possessing material containing child pornography under 18 U.S.C. § 2252A(a)(5)(B) are multiplicitous. *See* Appellant Br., *Vallare*, 20-50433, ECF No. 52, at 12. In that motion, counsel recognized that "Vallare's multiplicity challenge is foreclosed by this Court's precedent" in *Planck*, 493 F.3d 501, but that "[h]e raises the issue to preserve it for further review." *Id.* at 5. The brief did not explicitly advocate for a revisiting of the controlling precedent, nor implicitly suggest why *Planck* was wrongly decided. In fact, Mr. Vallare's counsel did not oppose the government's motion for summary affirmance. Mot. for Summ. Affirmance, *Vallare*, 20-50433, ECF No. 55.

While Mr. Vallare's description of appellate counsel's performance inches closer to what is required to establish deficient performance than his claims against his pretrial counsels, his contention again falls short of the mark. Although none of counsel's filings indicated that Mr. Vallare was consulted about the content and nature of the appeal, appellate counsel has no constitutional duty to discuss with his client the legal issues to be presented on appeal. *See Hooks v. Roberts*, 480 F.2d 1196, 1197 (5th Cir. 1973). What is more, Mr. Vallare cannot show that appellate counsel could have raised a "clearly stronger" issue but did not. *Moore*, 968 F.3d at 489. The Court finds that none of the issues raised in the instant motion to have merit; thus, even if Mr. Vallare had asked his counsel to press these issues, and counsel had done so, none would have been meritorious or affected the outcome of Mr. Vallare's case. For this reason, Claim 16 is without merit.

*       *       *

After careful review, the Court concludes that Mr. Vallare has not established that the performance of any of his attorneys was deficient or that he suffered any prejudice as a result. Therefore, the Court finds that his ineffective assistance of counsel claims, Claims 4 through 16, are without merit. *Strickland*, 466 U.S. at 700.

### C. Mr. Vallare's Claims Regarding This Court's Decisions and Conduct Are Without Merit

Finally, Mr. Vallare makes several allegations of improper evidentiary and trial-management rulings by this Court as well as judicial misconduct. *See* Def.'s Mot. at 33–36; Def.'s Reply at 9. The Court notes at the outset that Mr. Vallare does not demonstrate why any of the challenged rulings constitute an abuse of this Court's discretion. *Masat*, 896 F.2d at 94. Regardless, because the Court does not treat lightly allegations of judicial misconduct, the Court will explain precisely why the judicial actions challenged by Mr. Vallare either helped his case

or in no way prejudiced it, let alone unconstitutionally deprived him of a fair trial. *Williams*, 809 F.2d at 1086.

Claim 17 argues that the Court improperly denied Mr. Vallare the opportunity to conduct his own voir dire. Def.'s Mot. at 33. However, the Court is well within its discretion to conduct voir dire. *See* Fed. R. Crim. P. 24(a)(1) ("The court may examine prospective jurors or may permit the attorneys for the parties to do so."). "A court abuses its discretion when the scope of voir dire is inadequate to discover bias and deprives the defendant of an opportunity to make reasonable use of peremptory challenges." *United States v. Greer*, 968 F.2d 433, 435 (5th Cir. 1992). Nothing in the trial record suggests that Mr. Vallare objected to the Court's decision to conduct voir dire, *see generally* Pretrial Conf. Tr.; Trial Tr. (Day 1), ECF No. 209, nor has Mr. Vallare shown that he was deprived of any reasonable opportunity to discover potential bias or exercise his peremptory challenges. In fact, the Court extensively cooperated with Mr. Vallare during voir dire, including providing assistance with Mr. Vallare's objections to the government's voir dire questions, Trial Tr. (Day 1) 7:14–11:7, instructing the jury about his *pro se* status, *id.* 21:6–17, exercising his challenges, *id.* 46:16–17; 48:3–4; 49:14–15, and conducting frequent consultations to inquire if he had further questions, *id.* 52:25–53:2; 61:22–25. The record conclusively demonstrates that the Court did not err when opting to conduct voir dire. In fact, the Court actively assisted Mr. Vallare during the voir dire process. As such, Claim 17 must be denied.

Mr. Vallare's next claim involving a ruling by the Court, Claim 18, alleges that the Court improperly denied his request to admit certain FBI reports. Def.'s Mot. at 33–34. But as the government correctly notes, Mr. Vallare never actually moved to admit those reports. *See* Gov't Opp'n at 15–16. When Mr. Vallare offered to admit the reports into evidence, the Court

explained to him that, although the reports could be used for cross-examination of law enforcement witnesses, admitting them would be prejudicial to his case. *See* Trial Tr. (Day 2) 281:22–283:17. After consultations with Mr. Villarreal, his stand-by counsel, Mr. Vallare decided not to offer the reports for admission. *Id.* at 284:25–285:2. Therefore, the Court did not deny Mr. Vallare's request—he withdrew it. For this reason, Claim 18, like Claim 17, shows that the Court assisted Mr. Vallare, a far cry from an improper judicial ruling.

In Claim 19, Mr. Vallare recounts that, during jury selection, the Court made a comment to a potential juror, who was eventually seated on the jury, and suggests that the comment potentially prejudiced her against the defense. Def.'s Mot. at 35. The government responds that the comment, a joke, did not impact the case or prejudice Mr. Vallare in any way. Gov't Opp'n at 16. The Court agrees. The comment was unrelated to trial, nor did it reflect on Mr. Vallare's case. *See* Trial Tr. (Day 1) 72:10–12. Additionally, the juror had not yet been selected at the time of the comment, and Mr. Vallare could have stricken the juror if he believed the Court's comment would have tainted her to his prejudice. He chose not to exercise a strike. Thus, Claim 19 does not establish that the Court engaged in judicial misconduct.

Mr. Vallare insists in Claim 20 that he was deprived of a fair trial when the Court assigned to the government the responsibility to ensure that shared witnesses appeared for trial and those witnesses failed to appear. Def.'s Mot. at 35–36. Although he does not state which witnesses did not appear, his assertion finds no basis in the record. At the pretrial conference, Mr. Vallare represented that he planned to call only his mother as a witness in his case-in-chief and that he would cross-examine the FBI agents involved in the search of his residence and his arrest, whom the government planned to call in its case-in-chief. Pretrial Conf. Tr. 37:17–23. Mr. Vallare ultimately elected not to call his mother to testify, though he did cross-examine certain

FBI agents called by the government. In other words, Mr. Vallare is unable to identify any witnesses that he was unable to question. Moreover, to the extent that the Court assigned to the government responsibility for the FBI agents to appear for Mr. Vallare to cross-examine, the government already bore that responsibility because those agents were the government's own witnesses. Therefore, Claim 20 fails.

Finally, Mr. Vallare's Claim 21 alleges that, because the undersigned is an employee of the United States, and because the United States was also prosecuting the action, the Court was biased against him. Def.'s Reply at 9. It is not clear if Mr. Vallare claims a financial or an institutional bias by the Court in favor of the prosecution because the undersigned is a federal employee. Any variation of the argument is unavailing.

As this Circuit has recognized, "[b]ias is a difficult claim to sustain under [a 28 U.S.C. § 2255 motion] because the Supreme Court's case law on bias has acknowledge[d] that what degree or kind of interest is sufficient to disqualify a judge from sitting cannot be defined with precision." *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (internal citation and quotation marks omitted). In fact, the Supreme Court recognizes judicial bias arising to an unconstitutional level in only three narrow scenarios: "(1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints." *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005) (citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824–25 (1986), *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), and *In re Murchison*, 349 U.S. 133, 139 (1955)).

Not only does Mr. Vallare's bias claim not fall within the traditional categories recognized by the Supreme Court, the record does not come close to raising the presumption of bias. As for potential financial bias, that the Court obtains a salary from the federal government does not create an inherent or implicit bias in favor of the prosecution. In fact, the framers of the Constitution addressed this specific concern when vesting federal judges "with life tenure and undiminishable compensation." *Caprera v. Jacbos*, 790 F.2d 442, 444 (5th Cir. 1986); *see* U.S. Const., art. III, cl. 1. In so far as Mr. Vallare's motion claims institutional bias, it is clearly established that "[i]n our system of administering justice the functions of the trial judge and the prosecuting attorney are separate and distinct; they must not be confused." *United States v. Sheldon*, 544 F.2d 213, 218 (5th Cir. 1976). Nothing in the record indicates that the jury suffered confusion between the Court and the prosecutor. *See Bermea*, 30 F.3d at 1569. In fact, as previously discussed, the Court often intervened on Mr. Vallare's behalf to question the government. Therefore, because Mr. Vallare has not shown so much as a hint of bias, Claim 21 must be denied.

*      *      *

Overall, Mr. Vallare's assertions against this Court do not demonstrate, or even suggest, that actions by this Court were prejudicial to him, let alone amounting to the denial of a fair trial. *See Williams*, 809 F.2d at 1086. Accordingly, his trial management and judicial misconduct claims are without merit.

## IV.    CERTIFICATE OF APPEALABILITY

Before an appeal can be made of a final order denying a § 2255 motion, a court must "issue or deny a certificate of appealability." Fed. R. Governing § 2255 Proceedings 11(a). A defendant may not appeal a final order without a certificate of appealability, which requires "a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2255(c)(3). Doing so requires a demonstration "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to process further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)) (internal quotation marks omitted).

Mr. Vallare's claims are without merit. For these reasons, the Court finds that reasonable jurists would not debate whether Mr. Vallare's claims deserve encouragement to proceed further. Mr. Vallare has not made any substantial showing of the denial of a constitutional right. The Court will thus decline to issue a certificate of appealability here for Mr. Vallare's claims.

## V. CONCLUSION

For these reasons, the Court concludes that Mr. Vallare's motion and the record in his case do not show entitlement to relief. No evidentiary hearing is warranted, *see* 28 U.S.C. § 2255(b), and the Court will **DENY** Mr. Vallare's motion. No certificate of appealability shall issue. A separate Order consistent with this memorandum opinion shall issue on this date.

SIGNED this ___21st___ day, of June, 2023.

Royce C. Lamberth
United States District Judge

30